UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTIAN H.,[1]

                      Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

DECISION & ORDER

20-CV-1490MWP

**PRELIMINARY STATEMENT**

        Plaintiff Christian H. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI").[2] Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 11, 12). For the

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

[2] Plaintiff also applied for and was denied Disability Insurance Benefits; however, in her submissions she challenges only the Commissioner's determination denying her application for SSI. (Docket ## 11, 13). Accordingly, this decision addresses only the denial of plaintiff's SSI application.

reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

**I.     Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

    (1)    whether the claimant is currently engaged in substantial gainful activity;

    (2)    if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

    (3)    if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix

<div style="margin-left: 2em">
1 of Subpart P of Part 404 of the relevant regulations (the "Listings");
</div>

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II. The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 2, 2017, the application date. (Tr. 18).[3] At step two, the ALJ concluded that plaintiff had the severe impairments of "sprains [and] strains neck/back." (*Id.*). The ALJ also found that plaintiff had been treated for migraine headaches, asthma, contusions, and eczema but that these conditions were nonsevere. (Tr. 19-20). Additionally, the ALJ noted that plaintiff had complained of pain in multiple systems over the course of her medical history but concluded that these complaints of pain were not medically determinable. (*Id.*).

---

[3] The administrative transcript (Docket # 10) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

With respect to plaintiff's mental impairments, the ALJ concluded that plaintiff had the medically determinable mental impairments of anxiety, depression, and posttraumatic stress disorder ("PTSD"), but he concluded that these impairments were nonsevere because they did not cause more than minimal limitation in plaintiff's ability to perform basic mental work activities. (Tr. 20-21). In reaching this conclusion, the ALJ found that plaintiff's mental impairments only caused mild limitations in her ability to understand, remember, or apply information and no limitations in her ability to concentrate, persist, or maintain pace; adapt or manage herself; and interact with others. (*Id.*). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 21-22). The ALJ concluded that plaintiff retained the RFC to perform light work. (Tr. 22-29). At steps four and five, the ALJ found that plaintiff had no past relevant work but concluded, based on plaintiff's age, education, work experience, and RFC, that other jobs existed in significant numbers in the national economy that plaintiff could perform, such as merchandise marker, routing clerk, and photocopier machine operator. (Tr. 29-30). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

III.   **Plaintiff's Contentions**

Plaintiff contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 11-1, 13). Plaintiff's sole challenge is that the ALJ erroneously determined that her mental health impairments of anxiety, depression, and PTSD were nonsevere at step two and that this error was

5

not harmless because he failed to consider limitations associated with these impairments in formulating the RFC.[4]  (Docket # 11-1, 13).

## IV.     Analysis

Plaintiff maintains that the ALJ erred by concluding that her mental health impairments were nonsevere – an error that was not harmless because the ALJ failed to consider or cite plaintiff's mental health treatment notes in reaching this conclusion and failed to incorporate any mental health limitations into the RFC.  (Docket # 11-1, 13).  The Commissioner responds that the ALJ's determination that plaintiff's mental health impairments were non-severe was supported by the record and that, in any event, the ALJ explicitly considered these impairments during the remainder of the sequential evaluation and correctly concluded that they did not cause any functional limitations.  (Docket # 12 at 7-17, 19-20).  The Commissioner also maintains that any error was harmless because the hypothetical the ALJ posed to the vocational expert included a limitation to unskilled work.  (*Id.* at 17-19).  Upon review, I find that remand is not warranted based on the ALJ's step-two determination.

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe impairment" that "significantly limits [claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(a)(4)(ii), (c).  It is the claimant's burden to present evidence demonstrating severity at step two.  *See Briggs v. Astrue*, 2011 WL 2669476, *3 (N.D.N.Y.), *report and recommendation adopted by*, 2011 WL 2669463 (N.D.N.Y. 2011).  "An impairment or combination of impairments is 'not severe' when medical and other

---

[4] Plaintiff's contentions relate only to the mental component of the ALJ's RFC determination. Therefore, I address only the mental portion of the RFC.  *See, e.g.*, *Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 394 n.3 (W.D.N.Y. 2018) ("[p]laintiff challenges only those portions of his RFC relating to his mental limitations[;] . . . [a]ccordingly, this [d]ecision and [o]rder addresses the RFC only as it pertains to [p]laintiff's mental limitations").

evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to perform basic work activities." *Jeffords v. Astrue*, 2012 WL 3860800, *3 (W.D.N.Y. 2012) (citation omitted); *see also Schifano v. Astrue*, 2013 WL 2898058, *3 (W.D.N.Y. 2013) ("[a]n impairment is severe if it causes more than a *de minimis* limitation to a claimant's physical or mental ability to do basic work activities").

Moreover, where the claimant's alleged disability includes mental components, at steps two and three the ALJ must also apply the so-called "special technique." *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *see also* 20 C.F.R. §§ 404.1520a(b)-(e). Specifically, the ALJ must rate the claimant's "degree of functional limitation resulting from" a medically determinable mental impairment in "four broad functional areas": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(b)-(c); *see also Lynn v. Colvin*, 2017 WL 743731, *2 (W.D.N.Y. 2017) (discussing former version of 20 C.F.R. § 404.1520a(c)(3)). "If and how the analysis proceeds from that point depends upon the degree of impairment found. However, the ALJ must document his analysis, and his written decision must reflect application of the technique, and include a specific finding as to the degree of limitation in each of the four functional areas." *Lynn v. Colvin*, 2017 WL 743731 at *2 (alterations and quotations omitted).

Here, the ALJ recognized at step two that plaintiff's anxiety, depression, and PTSD were medically determinable impairments, but found that the conditions were not severe because they "d[id] not cause more than minimal limitation in [plaintiff's] ability to perform basic mental work activities." (Tr. 20). Applying the "special technique," the ALJ explained

7

that plaintiff had only "mild" limitations in one of the four broad categories of mental functioning outlined above. (Tr. 20-21). In reaching this conclusion, the ALJ relied upon the psychiatric consultative examination conducted by Christine Ransom ("Ransom"), PhD. (*Id.*). Contrary to plaintiff's contentions (Docket # 11-1 at 15), the ALJ also considered plaintiff's mental health treatment notes, which he concluded demonstrated that medical staff "generally reported that ["plaintiff's] functioning" in three of the four broad categories was "good." (*Id.* (citing Tr. 550-68)).

Because plaintiff's mental impairments "caused no more than 'mild' limitation in any of the functional areas," the ALJ determined that plaintiff's mental impairments were nonsevere. (*Id.* (citation omitted)). The ALJ concluded his step-two analysis by stating that the "limitations identified in the 'paragraph B' criteria are not a[n] [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (Tr. 21). He observed that "[t]he mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B" and that his RFC "assessment reflects the degree of limitation [he] . . . found in the 'paragraph B' mental function analysis." (*Id.* (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996))).

As stated above, plaintiff argues that the ALJ's step-two severity determination concerning her mental health impairments was not supported by substantial evidence. (Docket ## 11-1 at 14-15; 13 at 1-2). The Commissioner counters that the ALJ's step-two finding was supported by substantial evidence in the record and that plaintiff failed to demonstrate that "a reasonable factfinder would have to conclude that the ALJ's step two determination was incorrect." (Docket # 12-1 at 16 (citation and emphasis omitted)). Ultimately, I need not resolve

this dispute because any error in an "ALJ's severity assessment with regard to a given impairment is harmless . . . 'when it is clear that the ALJ considered the claimant's [impairments] and their effect on his or her ability to work during the balance of the sequential evaluation process.'" *Graves v. Astrue*, 2012 WL 4754740, *9 (W.D.N.Y. 2012) (alteration in original) (quoting *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 153 (N.D.N.Y. 2012)).

In this case, plaintiff's challenge is based upon a faulty proposition. According to plaintiff, because the ALJ determined that she suffered from medically determinable impairments that caused mild limitations in at least one of the broad categories of functioning, the ALJ necessarily erred by not incorporating at least some mental work-related restrictions in the RFC. (Docket ## 11-1 at 17 ("[h]ere, the RFC includes no mental health limitations"); 13 at 3 ("[t]his RFC included absolutely no mental limitations, and the ALJ failed to discuss why he did not incorporate any associated limitations into the RFC[;] . . . [i]t is, therefore, abundantly clear that the ALJ failed to account for [p]laintiff's mental impairments when formulating the RFC")). Although an ALJ must account for limitations caused by both severe and nonsevere impairments in formulating the RFC, *see Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order), if a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does not err by formulating an RFC without mental limitations or restrictions. *See Grace M. v. Comm'r of Soc. Sec.*, 2022 WL 912946, *3 (W.D.N.Y. 2022) ("even though mild limitations may cause functional restrictions, such limitations do not compel the inclusion of mental limitations in the RFC[;] . . . [w]here an ALJ's assessment of only mild limitations in mental functioning [is] supported by substantial evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC"); *DuBois v. Comm'r of Soc. Sec.*, 2022 WL 845751, *6 (S.D.N.Y. 2022) (rejecting plaintiff's

contention that "because the RFC formulated by the ALJ does not include 'any mental health restrictions,' . . . it is 'inconsistent' with his step two finding that plaintiff had 'medically determinable' (albeit non-severe) mental health impairments, including 'mild' limitations in each of the four functional areas assessed[;] . . . [i]n essence, plaintiff's argument is that once an ALJ has identified a medically determinable impairment at step two – even a *de minimis* impairment, . . . it is error if the ALJ fails to include a corresponding 'mental health restriction' in the claimant's RFC"); *Beliana M. v. Comm'r of Soc. Sec.*, 2022 WL 596045, *9 (D. Conn. 2022) (rejecting proposition that "an ALJ must include a restriction in the RFC if, at step two, he finds mild limitations resulting from a nonsevere impairment[;] [r]ather, he must consider whether any functional restrictions exist because of the mild limitations, and, only if they do, incorporate those restrictions into the RFC").  Accordingly, I conclude that the ALJ's determination not to include functional mental limitations in the RFC does necessitate remand.

        Plaintiff also contends that the ALJ improperly ignored her mental health treatment records in considering whether her mental impairments were severe at step two and whether the impairments caused any functional limitations during the remainder of the sequential process.  (Docket ## 11-1 at 15 ("[i]n his paragraph B findings, the ALJ exclusively cites to the consultative examination"); 13 at 4 ("[h]owever, during his Step Four assessment, the ALJ did not discuss any of the actual mental health treatment records")).  Plaintiff's contention ignores the ALJ's explicit citation to and summary of her mental health treatment records both at step two and during the remainder of the sequential evaluation.  (Tr. 21 ("[a]ccording to treatment notes, staff generally reported that the claimant['s] functioning in this area was good") (citing Tr. 550-68)); 28 ("Dr. Dipeolu further noted that . . . while the claimant[] continued to seek treatment, her symptoms remained generally stable over the course of her ongoing care") (citing

Tr. 638-93)). In any event, "an ALJ is not required to discuss every piece of evidence [and] lack of discussion does not imply the ALJ did not consider the evidence." *See Price v. Comm'r of Soc. Sec.*, 2020 WL 4288247, *5 (W.D.N.Y. 2020). Although the ALJ did not discuss plaintiff's mental health treatment records at length, his decision demonstrates that the records were considered by the ALJ, and I do not find that remand is warranted on this basis. *See id.* (concluding "[c]ontrary to [p]laintiff's assertion, the ALJ did not 'ignore' treatment notations" where the ALJ "acknowledged treatment notations" were submitted and concluded that they were "generally consistent with the earlier mental health treatment notes").

In this case, any step-two error by the ALJ in finding plaintiff's mental impairments non-severe was harmless because the ALJ proceeded through the sequential evaluation and explicitly considered plaintiff's mental health impairments during the subsequent analysis. Contrary to plaintiff's contention, the ALJ's decision shows that he considered plaintiff's mental impairments throughout the sequential evaluation but concluded that they did not cause functional limitations. (Tr. 22-29). Indeed, in formulating the RFC, the ALJ explicitly recognized that plaintiff claimed to suffer from mental impairments, but concluded that the evidence demonstrated that her mental impairments were "situational and intermittent" and caused "no more than mild functional impairment that has only slight restrictions on her mental abilities." (Tr. 28).

In reaching this conclusion, the ALJ discussed Ransom's evaluation during which plaintiff reported that, although she continued to experience symptoms, her medication was "quite helpful" and denied "ongoing clinical levels of depression, generalized anxiety, panic attacks, manic symptomatology, thought disorder, cognitive symptoms and deficits, or suicidal/homicidal ideation." (Tr. 23). The ALJ gave great weight to Ransom's opinion that

11

plaintiff's mental impairments caused at most mild episodic difficulties understanding and remembering complex directions and instructions and regulating her emotions, controlling her behavior, and maintaining her well-being. (Tr. 23, 28). The ALJ also considered and relied upon Dipeolu's opinion that plaintiff's mental impairments caused minimal functional limitations and were nonsevere. (Tr. 28, 82). Accordingly, I conclude that any error at step two was harmless and remand is not warranted. *See Grace M. v. Comm'r of Soc. Sec.*, 2022 WL 912946 at *4 ("this is not a case where the ALJ failed to consider plaintiff's non-severe impairments in assessing plaintiff's RFC, but rather a case where the ALJ appropriately determined that such impairments did not limit her ability to perform semi-skilled work"); *Price v. Comm'r of Soc. Sec.*, 2020 WL 4288247 at *4 ("the ALJ's decision contained a thorough discussion of [p]laintiff's mental impairments at step two thorough step four; therefore, any error the ALJ may have made at step two is harmless); *London v. Comm'r of Soc. Sec.*, 339 F. Supp. 3d 96, 106-107 (W.D.N.Y. 2018) ("[b]ecause the ALJ explicitly and clearly considered [p]laintiff's [mental impairment] in the remaining steps of the disability analysis, any error in its categorization as a nonsevere impairment was harmless, and [p]laintiff's argument on this point is without merit"); *Schifano v. Astrue*, 2013 WL 2898058 at *3 ("[w]here a finding of a severe impairment is improperly omitted, the error may be deemed harmless where the disability analysis continues and the ALJ considers the omitted impairment in the RFC determination") (citing *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order)).

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a

12

matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 12)** is **GRANTED**.  Plaintiff's motion for judgment on the pleadings **(Docket # 11)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

<div style="text-align:right">
*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge
</div>

Dated: Rochester, New York
       August 24, 2022